UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 10-32(2) (JNE/SRN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S RESPONSE TO** |
| v. | ) | **DEFENDANT LEACH'S PRETRIAL** |
| | ) | **MOTIONS** |
| (2) STEVEN JOSEPH LEACH, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned counsel, hereby respectfully submits this response to the Defendant Steven Leach's pretrial motions (Docket Nos. 97 through 113) in this matter.

**1.   Motion to Dismiss or to Compel the Government to Elect as to Count One of the Superseding Indictment and Accompanying Motion to Strike Surplusage (Docket Nos. 97 and 98).**

Defendant Leach has moved to dismiss Count One, the conspiracy count, arguing that it is impermissibly duplicitous because it charges multiple conspiracies in a single count.  The motion should be denied because Count One in fact charges a single conspiracy to commit wire fraud, albeit, like most complex fraud conspiracies, through multiple transactions and acts.  Moreover, at this stage, because the indictment on its face alleges a single conspiracy, it is not duplicitous, and the question of whether there is a single conspiracy or multiple conspiracies is for the jury to decide.  Because the defendant's motion is unsupported by the facts or the law, it should be denied.

On its face, Count One of the indictment properly charges that defendants Hecker and Leach conspired with each other and with others to commit wire fraud against lenders and others. Superseding Indictment, ¶ 10. As alleged, the unlawful purpose of the conspiracy was "to obtain millions of dollars from various sources, including financing from lenders, incentive money from automobile manufacturers, and sale proceeds from vehicles, all by making material false statements, false representations and omissions." Id., ¶ 11. The indictment goes on to allege, in paragraphs 12-19, the manner and means by which the conspiracy was committed. While Count One charges that conspirators obtained money from three sets of funding sources (lenders, retail customers, and automobile manufacturers),[1] the common thread throughout Count One is that in all respects the money was obtained, that is, the conspiracy was accomplished, through material false statements, false representations, and omissions. Id., ¶¶ 12-17. In another common thread, the indictment alleges that after each of these funding sources provided money to the Hecker organization, and after conspirators engaged in fraud, conspirators diverted the money to fund Defendant Hecker's extravagant lifestyle. Id., ¶ 12. Additionally, with respect to

---

[1] Of these funding sources, the lenders and retail customers are direct victims. Conspirators also caused a third funding source, automobile manufacturers, to provide millions of dollars in incentive payments through the misrepresentations and omissions directed at lenders.

all aspects of the conspiracy, the defendants and others engaged in cover-up and lulling communications. Id., ¶ 18. Finally, Count One alleges that, in an attempt to avoid repaying lenders, Hecker filed bankruptcy, and with the help of conspirators, concealed assets. Id., ¶ 19.[2]

In evaluating evidence introduced at trial, courts hold that the question of "[w]hether a given case involves single or multiple conspiracies depends on 'whether there was "one overall agreement" to perform various functions to achieve the objectives of the conspiracy.'" United States v. Radtke, 415 F.3d 826, 838 (8th Cir. 2005) (citations omitted). "Relevant factors 'includ[e] the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred.'" Id. at 839. "[A] conspiracy with multiple objectives is not the same thing as multiple conspiracies." Id. A "single overall conspiracy can be made up of a number of separate transactions and of a number of groups involved in separate crimes or acts." United States v. Roach, 164 F.3d 403, 412 (8th Cir. 1996). The defendants in a single conspiracy need not be aware of, or involved in, each

---

[2]Defendant Leach specifically contends that the allegations in paragraph 19 amount to a separate conspiracy that the bankruptcy estate was defrauded. That is not correct. The paragraph alleges that another means by which lenders in the conspiracy were defrauded was by Hecker's and his co-conspirators' asset concealment following a fraudulent bankruptcy filing.

illegal transaction. <u>Id.</u>; <u>United States v. Jenkins</u>, 78 F.3d 1283, 1289 (8th Cir. 1996). Stated another way, "[a] single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." <u>United States v. Smith</u>, 450 F.3d 856, 860 (8th Cir. 2006) (citations omitted).

Applying these legal principles to an examination of the indictment itself, it is clear that Count One properly alleges a single conspiracy. <u>See</u> <u>United States v. Begay</u>, 42 F.3d 486, 501 (9th Cir. 1994)(citations omitted)(in determining if indictment is duplicitous for stating multiple conspiracies, courts "look to the indictment itself"). While Count One alleges various transactions, various activities, various victims, and various participants, it properly charges a single, overall agreement over the course of a single time frame. <u>See</u> <u>Radtke</u>, 415 F.3d at 838 (court rejected defendant's argument that "the government failed to prove that the fraud targeted at different victims constituted a single conspiracy rather than two separate conspiracies" because, while there were multiple objects and some of the conduct changed, there was a single overall agreement to achieve conspiracy's objectives). Count One alleges a single, Minnesota-based conspiracy during a single time frame (from about November 2006 through about June 2009), to commit wire fraud by defrauding persons who would provide money to Hecker and the Hecker organization. Moreover, because

there is one common conspirator, Defendant Hecker, it is of no consequence that Defendant Leach was not involved in, or necessarily knowledgeable about, all aspects of the conspiracy. See Smith, 450 F.3d at 860.  Thus it is also irrelevant that Leach left the Hecker organization in December 2007.[3]

Nonetheless, at this stage, so long as the indictment alleges a single conspiracy on its face, courts uniformly hold that the indictment is not duplicitous and that the jury should be allowed to decide whether the government has proven a single conspiracy. See United States v. Rigas, 281 F. Supp. 2d 660, 664 (S. D. N. Y. 2003)(although the conspiracy count alleged a number of fraudulent acts, accomplished through various ways and having an effect on various persons and entities, because the count adequately connected these activities to one conspiracy, it was not duplicitous, and multiple vs. single conspiracy question was one for the jury); United States v. Johnson, 239 F. Supp. 2d 897, 911 (N.D. Iowa 2002)(because "the government had at least adequately alleged a single, timely conspiracy," the court left "with the jury

---

[3]Leach is not arguing, nor could he, that he withdrew from the alleged conspiracy when he resigned in December 2007.  The conspiracy count is charged under 18 U.S.C. § 1349, a statute which does not require proof of an overt act, and courts uniformly hold that withdrawal is not a defense to conspiracy charged under statutes not requiring proof of an overt act.  See, e.g., United States v. Grimmett, 150 F.3d 958, 961 (8th Cir. 1998) (noting that "a defendant may not raise withdrawal as an affirmative defense to a conspiracy charge where no overt act is necessary"); see also United States v. Francis, 916 F.2d 464, 466 (8th Cir. 1990).

the question of whether the government can ultimately prove such a single conspiracy"); see also United States v. England, 966 F.2d 404, 406 (8th Cir. 1992)(question of whether there is a single conspiracy or multiple conspiracies is for the jury to decide).

At most, Defendant Leach's multiple conspiracy arguments amount to a factual dispute that is properly resolved by the jury at trial. See United States v. Alexander, 736 F. Supp. 968, 995 (D. Minn. 1990)(court held duplicity question not appropriately resolved at the pretrial stage where defendant's multiple conspiracy argument was "entirely dependent upon proof at trial of their underlying assertions"; the jury should decide whether there were multiple conspiracies). Moreover, at trial, any issue regarding whether the evidence demonstrates multiple conspiracies rather than a single conspiracy can be addressed through appropriate jury instructions. As the Eighth Circuit model instruction for Single/Multiple Conspiracies makes clear:

> The Government must convince [the jury] beyond a reasonable doubt that each defendant was a member of the conspiracy charged in the indictment. If the Government fails to prove this as to a defendant, then [the jury] must find the defendant not guilty of the conspiracy charge, even if [the jury] find[s] that [the defendant] was a member of some other conspiracy.

Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 5.06G. Indeed, even if Count One were duplicitous, which it is not, this type of instruction would in any event cure any "risk of a nonunanimous jury verdict inherent in a duplicitous count . . .

6

." United States v. Rabinowitz, 56 F.3d 932, 933 (8th Cir. 1995). Moreover, this model instruction demonstrates that, if the defendant is correct that the government will not be able to prove one conspiracy in Count One, it is the government that takes the risk of an acquittal on that count.

In the alternative, Defendant Leach has moved to strike paragraphs 16-19, claiming they are surplusage and are irrelevant and unfairly prejudicial. Specifically, Leach seeks to strike paragraphs regarding fraud on lenders (¶ 16), fraud on retail customers (¶ 17), lulling communications (¶ 18), and concealing assets and filing bankruptcy to avoid repaying lenders (¶ 19). Leach's motion should be denied because, as previously discussed, these paragraphs are relevant to describing the manner and means of the charged conspiracy.

The applicable rule, Fed. R. Crim. P. 7(d), has been strictly construed against striking surplusage. "A motion to strike surplusage from an indictment . . . should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." United States v. Michel-Galaviz, 415 F.3d 946, 948 (8th Cir. 2005) (citations omitted); see United States v. DeRosier, 501 F.3d 888, 897 (8th Cir. 2007). As several courts have recognized, "if the language in the Indictment is information which the government hopes to properly prove at trial, it cannot be considered

surplusage no matter how prejudicial it may be." <u>United States v.
Lov-It Creamery</u>, 704 F. Supp. 1532, 1550-51 (E.D. Wis. 1989)
(<u>citing</u> <u>United States v. Climatemp, Inc.</u>, 482 F. Supp. 376, 391 (N.
D. Ill. 1979), <u>aff'd</u>, 705 F.2d 461 (7th Cir. 1983)).   Here,
paragraphs 16-19 are plain statements of the government's
conspiracy allegations.   They are relevant, not prejudicial or
inflammatory, and therefore they are not surplusage.

Finally, the government notes that it is intending to present
a Second Superseding Indictment that will strike paragraph 17, the
allegations relating to the sales tax matter and fraudulent conduct
regarding retail customers.[4]   As a result of striking that
paragraph, to the extent any of the defendant's arguments are
directed at paragraph 17, those arguments should also be denied as
moot.

## 2.  Motion to Dismiss Counts 8-15 of the Superseding Indictment (Docket Nos. 99 and 100).

Defendant Leach has moved to dismiss Counts 8-15, each of the
counts of wire fraud relating to the alleged "Suzuki" fraud scheme.
In Counts 8-15, the indictment alleges that, from about 2006
through about 2009, Defendant Hecker, Leach and others schemed to

---

[4]The government is superseding primarily to simplify the case
for trial.   It may also make minor changes to the indictment not
relevant here, such as potentially adding additional wire fraud
counts and/or additional bankruptcy fraud counts, based on the
existing theories currently set forth in the Superseding
Indictment.   The government will pursue sales tax matters and other
uncharged conduct as relevant conduct at sentencing.

defraud various lenders who funded the Hecker organization's purchase of Suzuki vehicles. Lenders provided funding pursuant to Suzuki vehicle purchase contracts that Leach and others fraudulently altered, including in 2008, 2007, and prior to 2007. See Superseding Indictment, ¶¶ 43, 46, 47. Leach participated in the scheme from 2006 through at least the winter of 2007, after which time he left the Hecker organization. Id., ¶¶ 43, 45, 47-48, 50. During that time, however, Leach's actions pertained to all of the Suzuki contracts at issue, including the 2008 Suzuki contract, which he negotiated and participated in fraudulently altering in late 2007. Id.

The gist of Defendant Leach's arguments seems to be that the alleged Suzuki wire fraud counts should be dismissed because they pertain only to 2008/the 2008 Suzuki contract, and Leach was gone from the Hecker organization by late 2007. As discussed in more detail below, Leach has it wrong, both factually and legally, and his motion should be denied.

When evaluating a motion to dismiss an indictment for failure to state an offense, the court must look to the indictment to determine if it "contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Hernandez, 299 F.3d 984,

9

992 (8th Cir. 2002)(citations omitted).  An indictment is normally sufficient if its language tracks the statutory language.  Hamling v. United States, 418 U.S. 87, 117 (1974).  Here, as Leach concedes (p. 4 of his motion), the indictment tracks the statutory language. It is therefore sufficient on its face.

Leach's primary argument is that Counts 8-15 should be dismissed because they do not allege that Leach was involved in all aspects of the Suzuki fraud scheme from beginning to the end.  That is not the law.  To prove wire fraud, the government need only show that the defendant in some way voluntarily joined a scheme to defraud another out of money, that he or she did so with intent to defraud, that it was reasonably foreseeable that interstate wire communications would be used in furtherance of the scheme, and that interstate wire communications were used.  United States v. Slaughter, 128 F.3d 623, 628 (8th Cir. 1997).[5]  The government is not required to prove that a defendant participated in any of the alleged wires.  See United States v. Hetherington, 256 F.3d 788, 794 (8th Cir. 2001) (citations omitted)(affirming wire fraud convictions despite no evidence the defendant himself transmitted or caused to be transmitted the two wire transfers at issue because "a defendant will be deemed to have 'caused' the use of . . . the interstate wires if the use was the reasonably foreseeable result

---

[5]Each wire, although in furtherance of a single scheme, is considered a separate offense under the wire fraud statute.  See United States v. Calvert, 523 F.2d 895, 904 (8th Cir. 1975).

of his actions"). Especially where, as here, the scheme continues and repeats over an extended period of time, conduct is within the mail or wire fraud statutes when it is reasonably foreseeable that the mails or wires would be used to further the transactions set in motion by the defendant. See United States v. Boyd, 606 F.2d 792, 794 (8th Cir. 1979).

Thus, even if Leach were correct, and the indictment only alleged that he was involved in the alleged fraud scheme with respect to the 2007 Suzuki contract, his motion should still be denied. The indictment alleges a single overall scheme, and under an aiding and abetting theory and otherwise, even minor participation in the early part of the scheme is enough to state a wire fraud offense. See United States v. Hively, 437 F.3d 752, 764 (8th Cir. 2006)(court upheld mail fraud conviction based on aiding and abetting theory where defendant undertook some acts for his boss in participation of overall scheme but did not do a number of other acts); see also Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 5.01 ("A person may be found guilty of [an offense] even if [he][she] personally did not do every act constituting the offense charged, if he she aided and abetted the commission of [the offense].").

Further, Defendant Leach's motion should be denied because he is factually incorrect. Notwithstanding his efforts to mischaracterize the indictment, a correct reading of the indictment

11

makes clear that the government has in fact charged him with acts pertaining to the 2008 Suzuki contract, including that he negotiated and fraudulently altered the 2008 Suzuki contract. The indictment alleged Leach was involved with <u>all</u> fraudulent Suzuki contracts at issue. <u>See</u> Superseding Indictment, ¶¶ 43, 45, 47-48, 50.[6]

Because Leach initiated the wire fraud through the acts set forth in these paragraphs, and because it was reasonably foreseeable that the wires would be used to further this fraud, Counts 8-15 have properly stated an offense against Leach, despite that Leach had left the Hecker organization by the time of the wires. <u>See</u> <u>Boyd</u>, 606 F.2d at 794.

In sum, because Counts 8-15 track the wire fraud statute and properly state an offense against Defendant Leach based on his participation in the alleged scheme for the 2007 <u>and</u> 2008 Suzuki Contracts, acts which set in motion a scheme in which later wires were reasonably foreseeable, this Court should deny his motion to dismiss those wire fraud counts.

---

[6]Notably, in Leach's arguments, he makes no reference to paragraphs 47-48 and 50. In other words, in arguing that the government failed to allege his involvement with the 2008 Suzuki contract, Leach necessarily had to omit referencing the very paragraphs that allege his involvement with the 2008 Suzuki contract. This blatant omission further demonstrates the lack of merit to his arguments.

3.     **Motion for Severance of Defendants (Docket Nos. 101 and 102)**.

Defendant Leach seeks a separate trial and has moved for severance of his case from Defendant Hecker's case.   As grounds, he argues that he risks "guilt by association" with Hecker, who has been the subject of pretrial publicity, and he argues that the jury might not compartmentalize evidence that will be presented against Hecker pursuant to bankruptcy fraud-related charges.  Because joint trials of co-conspirators are strongly favored and because Leach cannot show severe or compelling evidence of undue prejudice that might result from a joint trial, this Court should exercise its discretion to maintain a consolidated trial.

It is well settled that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or series of incidents constituting an offense or offenses.  Fed. R. Crim. P. 8(b).  The federal system expresses a strong preference for joint trials of defendants who are indicted together.  Zafiro v. United States, 506 U.S. 534 (1993).  Persons charged with conspiracy or jointly indicted with respect to conduct in related transactions should generally be tried together, and courts hold that it will rarely be improper for such co-conspirators to be tried together.  United States v. Kindle, 925 F.2d 272, 277 (8th Cir. 1991); United States v. Stephenson, 924 F.2d 753, 761 (8th Cir. 1991); United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989).  Similarly, pursuant to Fed. R. Crim. P. 14(a),

the trial judge has the discretion whether to sever the cases of co-defendants where there has been a motion to sever. United States v. Knife, 592 F.2d 472, 480 (8th Cir. 1979). Unless the party seeking severance can show that the benefits are outweighed by a clear likelihood of prejudice, the cases should be tried together. Zafiro, 506 U.S. at 537; United States v. Frazier, 280 F.3d 835, 844 (8th Cir. 2002). "Generally, persons charged with conspiracy should be tried together, particularly in cases such as this 'where proof of the charges against the defendants is based upon the same evidence and acts.'" United States v. Williams, 429 F.3d 767, 772 (8th Cir. 2005)(quoting United States v. Blaylock, 421 F.3d 758, 766 (8th Cir. 2005)).

In this case, Defendant Leach has been charged in the same conspiracy and wire fraud schemes, based on much of the same evidence and acts, as his co-defendant Hecker. Accordingly, the defendants are properly joined for trial and, as a general rule, they should be tried together. Although Leach claims that a consolidated trial will prejudice him, the issue is whether he will be unduly prejudiced, and whether the evidence of such undue prejudice, which he has the burden of demonstrating, is "severe or compelling." United States v. Pherigo, 327 F.3d 690, 693 (8th Cir. 2003) (citations omitted). Ultimately, the district court has the discretion whether to sever the case against Defendant Leach, applying the "severe or compelling" prejudice standard. See United

14

States v. Ruiz, 412 F.3d 871, 886 (8th Cir. 2005).  As discussed below, any such prejudice is not severe or compelling and, in any event, can be eliminated by limiting instructions, court voir dire, and related measures.

First, Defendant Leach argues that he will be prejudiced in a joint trial because Hecker has been the subject of much pretrial publicity.  Because the Court will be undertaking various measures to ensure that the jury venire and the selected jury is not tainted by such publicity, Leach cannot demonstrate severe undue prejudice.[7]  As the court held in United States v. Childress, 58 F.3d 693, 706 (D.C. Cir. 1995)(quoting Irvin v. Dowd, 366 U.S. 717, 722-23 (1961)), pretrial publicity by itself is not problematic:

> The mere existence of intense pretrial publicity is not enough to make a trial unfair, nor is the fact that potential jurors have been exposed to this publicity. Although the Constitution is understood to require that defendants be judged by "a panel of indifferent jurors," those jury members "need not be totally ignorant of the facts and issues involved." Rather, "it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

Id.; see Mastrian v. McManus, 554 F.2d 813, 818 (8th Cir. 1977) (providing that the test as to whether pretrial publicity will make a trial unfair is "whether the prospective juror 'can lay aside his

---

[7]Most of the pretrial publicity concerns matters outside this case, such as issues regarding Hecker's personal bankruptcy and divorce matters.  A fair amount of the publicity was promoted by Defendant Hecker himself.

impression or opinion and render a verdict based on the evidence presented in court'") (quoting Murphy v. Florida, 421 U.S. 794 (1975).  Almost certainly, the Court in this case will conduct extensive voir dire about the pretrial publicity, will strike for cause those jurors who cannot be fair, and will instruct selected jurors to refrain from reviewing news items about Hecker, Leach, or the case.  Those steps should eliminate any potential prejudice that either defendant would likely suffer as a result of Hecker's pretrial publicity.  See United States v. Box, 50 F.3d 345, 357 (5th Cir. 1995) (defendant could show no abuse of discretion in court's decision not to sever his case from a co-defendant whose prior conviction was subject to pretrial publicity; court allowed extensive voir dire regarding the pretrial publicity and admonished the jury to avoid any news sources).

In addition, Defendant Leach argues that a joint trial will prejudice him because Hecker has been charged in additional bankruptcy-fraud related counts that have nothing to do with Leach. First, Leach's arguments do not address the fact that in each of the conspiracy and fraud counts with which Leach has also been charged (Counts 1-15), the indictment includes allegations regarding the bankruptcy-related conduct, including that Hecker filed bankruptcy as part of a scheme to defraud lenders, while he and others concealed assets.  Superseding Indictment, ¶¶ 19, 37, 58.  In other words, Hecker's bankruptcy-related conduct is already

a part of the case and was a part of the original conspiracy and fraud counts, even before the government superseded to add the bankruptcy fraud counts (Counts 16-25).  Thus, trial in this joint case will not be appreciably longer than a trial without the bankruptcy fraud counts because most of the bankruptcy-related evidence will be introduced pursuant to the counts charged against Leach.  Evidence of the bankruptcy-related conduct will arguably be more harmful against Hecker, but courts have long held that "[a] defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than the evidence against him."  United States v. Jackson, 549 F.2d 517, 525 (8th Cir. 1977) (citations omitted); see United States v. Delpit, 94 F.3d 1134, 1143-44 (8th Cir. 1996).

Courts in other cases have rejected severance arguments similar to those Leach makes here.  For example, in United States v. Rimell, 21 F.3d 281 (8th Cir. 1994), the defendant argued that her case was improperly joined with that of her husband because she was only involved in and charged with bankruptcy fraud but was required to stand trial in a case that also included charges of bank fraud brought only against her husband.  Id. at 289.  The court rejected her argument, concluding that "[t]here was overlapping evidence between the bank fraud and bankruptcy fraud counts.  The conduct charged in the bankruptcy fraud counts followed and was a result of the conduct at issue in the bank fraud

counts." <u>Id.</u>   The court also cited with approval the magistrate judge's conclusion that joinder was proper because "the indictment reflect[ed] a sequence of connected events with the defendants being involved at various points in the continuum." <u>Id.</u>   The same is true here, where the bankruptcy-related acts followed from and were the result of the conduct at issue in the conspiracy and fraud charges.   The joinder of all charges is therefore proper.

In addition, it makes the most sense, and would conserve the resources of the Court and parties, if there were to be a single trial regarding all issues.   In contrast, if the case were severed, the result is two trials with significant, if not entire, overlap of witnesses and other evidence.   <u>See</u> <u>Hively</u>, 437 F.3d at 765 (finding that trying co-defendants together conserves scarce time and resources, and gives the jury the best perspective on all of the evidence).

Further, to the extent there is any risk of prejudice to Leach, the Court can employ a number of measures far less drastic than holding two trials.   For example, the Court can instruct the jury that it must give separate and individual consideration to each charge against each defendant and that certain evidence is admissible only as to one defendant.   Such instructions to the jury have been deemed appropriate to eliminate any possible prejudice from joint trials.   <u>See</u> <u>Zafiro</u>, 506 U.S. at 539; <u>see also</u> <u>United States v. Mickelson</u>, 378 F.3d 810, 818 (8th Cir. 2004)("The risk of

18

prejudice posed by joint trials is best cured by careful and thorough jury instructions."); United States v. Ghant, 339 F.3d 660, 666 (8th Cir. 2003) ("In assessing the jury's ability to compartmentalize the evidence against joint defendants, we consider the complexity of the case . . . and the adequacy of the jury instructions and admonitions to the jury."); United States v. Moore, 149 F.3d 773, 778 (8th Cir. 1998)(finding that severance was not warranted where the court's ongoing limiting instructions would minimize any spillover effect); but see United States v. Grey Bear, 863 F.2d 572, 587 (8th Cir. 1988) (court found prejudicial misjoinder in joint trial with some defendants charged with murder and other defendants charged only with perjury and intimidation of witnesses relating to the same murder; prosecutor had improperly suggested that all defendants were somehow involved in the perjury and witness intimidation, and court concluded that jury's deliberations were tainted by evidence of perjury and witness intimidation).

In this case, Defendant Leach may well benefit from a joint trial that includes the charges of bankruptcy fraud directed to Defendant Hecker.  For example, Leach may be able to argue that his own conduct stands in stark contrast to that of Defendant Hecker, and he may be able to focus the jury's attention away from his own conduct.  In any event, the differing roles at the Hecker organization between Hecker (owner/operator, see Superseding

Indictment, ¶ 2) and Leach (senior officer, ¶ 3), should assist the jury in compartmentalizing the evidence against each. <u>See</u> <u>United States v. O'Connell</u>, 841 F.2d 1408, 1432-33. (8th Cir. 1988)(court held that a joint trial involving various members of drug conspiracy, not all of whom were charged in the same counts, did not create prejudice, as the roles of the defendants were sufficiently distinct).

Defendant Leach suggests, without any support, that "a joint trial in this case will prevent Mr. Leach from calling Mr. Hecker as a witness on Mr. Leach's behalf." Mem. of Law in Support of Motion for Severance, Docket No. 102, at p. 7. In fact, Mr. Hecker retains a Fifth Amendment right that he can either invoke--or waive--at his choosing. That right applies equally in a joint trial or in separate trials. That Hecker would even be a witness for Leach, and if so, how his testimony would help Leach, is unsubstantiated. <u>See</u> <u>United States v. Blaylock</u>, 421 F.3d 758, 767 (8th Cir. 2005).

For all of the foregoing reasons, Defendant Leach cannot demonstrate any prejudice to him as a result of a joint trial, much less "severe or compelling" prejudice. Thus, a joint trial in this case, as in most cases with multiple defendants, will best promote judicial efficiency and the interests of justice, and Leach's motion should be denied.

**4.   Motion for Early Disclosure of Jencks Act Material (Docket Nos. 103 and 104)**

The government opposes Defendant Leach's motion for an order requiring early production of Jencks Act material.  Rule 16(a)(2) of the Federal Rules of Criminal Procedure specifically excludes statements made by government witnesses from pretrial discovery, except as provided in the Jencks Act.  The Jencks Act states in relevant part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a).  This language has been interpreted according to its terms.  Although the government may voluntarily disclose Jencks Act material to a defendant in advance of trial, the government is not required to do so.  Thus, Rule 16(a)(2) & (3) make plain that Rule 16 does not require early disclosure of witness statements.

Moreover, it has been repeatedly and consistently held in this Circuit and District that the United States may not be required to make pretrial disclosure of Jencks material.  See United States v. White, 750 F.2d 726 (8th Cir. 1994) ("Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, the government may not be required to do so");

21

United States v. Alexander, 736 F.Supp. 968, 981 (D. Minn. 1990)(Rosenbaum, J.) ("Rule 16(a)(2) . . . specifically excludes statements made by government witnesses from pre-trial discovery, except as provided in the Jencks Act'); see also United States v. Ben M. Hogan Co., 769 F.2d 1293, 1300 (8th Cir. 1985); United States v. White, 750 F.2d 726 (8th Cir. 1984); Finn v. United States, 919 F. Supp. 1305, 1315 (D. Minn. 1995).

Notwithstanding the foregoing authority, the United States has voluntarily offered to produce its Jencks Act material two weeks prior to trial. The United States respectfully requests that any order requiring it to provide such early Jencks Act material be made reciprocal and require the defendants to provide Jencks Act material two weeks prior to trial.

**5.   Motion for Disclosure of Evidence Favorable to the Defense and for Disclosure of Impeachment Information (Docket Nos. 105 and 106)**

The government is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, and it has complied and will continue to comply with its obligations. In Brady, the Supreme Court held that the government's failure to produce evidence that is both favorable to the defense and material to guilt or punishment violates a defendant's due process right to a fair trial. Brady, 373 U.S. at 87. Brady, however, is not a rule of discovery. "'The rule of Brady is limited to the discovery, after trial, of information

which had been known to the prosecution but unknown to the defense.'" <u>United States v. Kime</u>, 99 F.3d 870, 882 (8th Cir. 1996) (<u>quoting</u> <u>Nassar v. Sissel</u>, 792 F.2d 119, 121 (8th Cir. 1986)).

The government respectfully requests the Court issue its standard order for <u>Brady</u> evidence.

## 6.   Motion for Witness List (Docket Nos. 107 and 108)

The defendant requests disclosure of the government's witness list one week prior to trial.  The government objects to this request as without legal authority.  Criminal defendants have no right in noncapital cases to require disclosure of the list of government witnesses under Fed. R. Crim. P. 16(a); <u>United States v. White</u>, 750 F.2d 726, 728 (8th Cir. 1984).

Notwithstanding the foregoing, the government does not object to an order requiring production of the parties' witness lists one week prior to trial, so long as the order applies equally to all parties.

## 7.   Motion for Exhibit List (Docket Nos. 109 and 110)

The defendant requests disclosure of the government's exhibit list one week prior to trial.  Although there is no authority for this request, the government does not object to an order requiring production of the parties' exhibit lists one week prior to trial, so long as the order applies equally to all parties.

**8.    Motion for Expert Witness Disclosure (Docket No. 111)**

Defendant Leach has moved the Court for an order directing the government to make all expert witness disclosures available 21 days before trial.  The government respectfully requests that the Court order that all Rule 16(a)(1)(G) disclosures, those of the government and those of the defendants, be made no later than three weeks trial, and any rebuttal expert disclosures one week prior to trial.  See United States v. Finn, 919 F. Supp. 1305, 1316 n.7 (D. Minn. 1995) (ordering government to make Rule 16(a)(1)(G) disclosures as opinions become available and no later than seven days before trial and rejecting defendant's request that such disclosures be made at least 45 days prior to trial).  Such a timing requirement allows both parties sufficient notice of the expected testimony and time to prepare a focused cross-examination of the expert.  See FED. R. CRIM. P. 16 advisory committee's note, 1993 Amendments.  Because the defendant is also obligated, pursuant to Rule 16(b)(1)(C), to provide expert disclosures, the government respectfully requests that any order apply to all parties.

**9.    Motion for Disclosure of 404(b) Evidence (Docket No. 112)**

Defendant Leach seeks an order compelling the government to provide a Rule 404(b) disclosure 14 days before trial.  The government is fully aware of its disclosure obligation under Rule 404(b) and will fully comply with that obligation.  However, the government objects to disclosure 14 days prior to trial, which is

not required by Rule 404(b). FED. R. EVID. 404(b) advisory committee's notes, 1991 Amendments ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request will depend largely on the circumstances on each case.").

The government proposes to notify the defense of Rule 404(b) evidence it intends to use at trial no later than 10 days prior to trial, or upon learning of the existence of the evidence, whichever occurs later in time.

## 10. Motion for Government Agents to Retain Rough Notes (Docket No. 113)

Defendant Leach has moved for an order directing government agents to retain and preserve rough notes. The government has no objection to an order directing government law enforcement agents to retain their rough notes made as part of this investigation, if any. The government does, however, object to <u>production</u> of the notes because they are not subject to discovery under Rule 16(b) or the Jencks Act. <u>United States v. Roell</u>, 487 F.2d 395, 401 (8th Cir. 1973); <u>United States v. Long</u>, 468 F.2d 755, 756 n.1 (8th Cir. 1972).

## CONCLUSION

For the reasons stated herein, the United States respectfully asks that the Court rule on Defendant Leach's motions as set forth above.


Date: June 21, 2010                    Respectfully Submitted,

                                       B. TODD JONES
                                       United States Attorney

                                       /s/ Nicole A. Engisch


                                       BY:
                                       NICOLE A. ENGISCH
                                       NANCY E. BRASEL
                                       DAVID M. GENRICH
                                       Assistant U.S. Attorneys