UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. CR-10-32 JNE/SRN |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Dennis Earl Hecker (01), and Steven Joseph Leach (02), | |
| Defendants. | |

Nicole A. Engisch, David M. Genrich and Nancy E Brasel, United States Attorney's Office, 300 South Fourth St., Minneapolis, Minnesota 55414, for Plaintiff United States of America

Brian N. Toder, Chestnut Cambronne, P.A., 17 Washington Avenue North, Suite 300, Minneapolis, Minnesota 55401, for Defendant Dennis Earl Hecker (01)

Robert D. Sicoli, Law Offices of Robert D. Sicoli, Ltd., 8000 Flour Exchange Building, 310 Fourth Avenue South, Minneapolis, Minnesota 55414, for Defendant Steven Joseph Leach (02)

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on the following motions of Defendant Hecker: Motion to Dismiss Counts 1 and 16 of the Superseding Indictment (Doc. No. 140); Motion to Suppress Statements (Doc. No. 145); and Motion to Suppress Wire Taps, Oral Communications and other Electronic Eavesdropping (Doc. No 148). Also before the Court are the following motions of Defendant Leach: Motion to Dismiss or Elect as to Count 1 of the Superseding Indictment (Doc. No. 97); and Motion to Dismiss Counts 8-15 of the Superseding Indictment (Doc. No. 99).

1

This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[1]

I. BACKGROUND

Defendants are charged in the Superseding Indictment with conspiracy to commit wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 2; 1343; and 1349. (Doc. No. 49.) Defendant Hecker is additionally charged with money laundering, in violation of 18 U.S.C. §§ 2 and 1957, and committing bankruptcy fraud by making false declarations, in violation of 18 U.S.C. § 152(3), and by making fraudulent transfers, in violation of 18 U.S.C. §§ 2 and 152(7).

No witnesses testified at the criminal motions hearing and no exhibits were offered.

II. DISCUSSION

A. Defendants' Motions to Dismiss

Both Defendants move to dismiss Count 1 of the Superseding Indictment, which charges them with conspiracy to commit wire fraud. Alternatively, Defendants seek an order requiring the Government to elect, or choose, which criminal act that it wishes to prosecute. (Def. Leach's Mot. Dismiss or Compel Govt. to Elect. at 1-2.) In addition, Defendant Hecker moves to dismiss Count 16 of the Superseding Indictment, which charges him with making false declarations in connection with his bankruptcy proceedings, <u>In re Dennis E. Hecker</u>, 09-BKY-50770, in the United States Bankruptcy Court for the District of Minnesota.

---

[1] The Court has addressed Defendants' non-dispositive motions in a separate Order.

1. **Defendants' Motions to Dismiss Count 1**

   a. **Whether Count 1 is Duplicitous**

In moving to dismiss Count 1, Defendants argue that it is duplicitous, charging two or more distinct and separate offenses. (Def. Hecker's Mem. Supp. Mot. Dismiss Cts. 1 & 16 at 1; Def. Leach's Mot. Dismiss or Compel Govt. to Elect. at 1-2.)

Count 1 alleges a conspiracy in which the conspirators obtained money from three sources: lenders, retail customers and automobile manufacturers. According to the Government's allegations, Defendants were engaged in a conspiracy that presented fraudulently altered documents to lenders, made false representations to retail customers regarding proceeds intended to pay tax, title and license fees, and concealed assets in connection with Defendant Hecker's bankruptcy. (See Superseding Indictment, Count 1.) Defendant Hecker contends that Count 1 presents "three separate, unrelated, distinct offenses, occurring at different times, involving completely different alleged victims, witnesses and radically different amounts of alleged losses." (Id. at 2.) This "conflation of offenses," he argues, could result in a conviction in which the jurors do not unanimously agree on what particular conduct constitutes guilt, "thereby subjecting defendant to a Constitutional train wreck of Biblical proportions." (Id.)

Defendant Leach similarly contends that the allegations in Count 1 represent a series of logically, temporally and factually distinct conspiracies which cannot be charged in a single count. (Def. Leach's Mot. Dismiss or Compel Govt. to Elect. at 2-3.) Moreover, Defendant Leach argues that he left the Hecker organization in December 2007 – which the Superseding Indictment alleges in ¶ 34 was in an attempt to distance himself from his participation in the fraud – and thus could not, as a factual matter, have participated in a conspiracy that continued

through at least June 2009. (Id. at 2.) Mr. Leach contends that Count 1, as charged, would allow the jury to un-unanimously convict based on three "different conspiracies" – two of which post-date Mr. Leach's departure from the Hecker organization. Defendant Leach also characterizes the allegations in ¶ 19 as a separate conspiracy alleging the defrauding of the bankruptcy estate and he argues that he did not participate in this conduct. Similarly, Defendant Leach maintains that he was not involved in the retail fraud allegations set forth in ¶ 17.

The Government opposes Defendants' motions, arguing that Count 1 charges a single conspiracy to commit wire fraud, albeit, "like most complex fraud conspiracies, through multiple transactions and acts." (Govt.'s Resp. to Def. Leach's Pretrial Mots. at 1.) At this stage, because it alleges a single conspiracy on its face, the Government argues that it is not duplicitous and it will be the jury's decision, at a later stage, to resolve any factual dispute with respect to single or multiple conspiracies.

Specifically, the Government contends that Count 1 properly alleges that Defendants Hecker and Leach conspired with each other and others to commit wire fraud against lenders and others. (Id. at 2) (citing Superseding Indictment, ¶ 10.) The unlawful objective of the conspiracy, the Government alleges, was "to obtain millions of dollars from various sources, including financing from lenders, incentive money from automobile manufacturers, and sale proceeds from vehicles, all by making material false statements, false representations and omissions." (Superseding Indictment, ¶ 11.) Although Count 1 alleges that Defendants obtained funding from three different sources – lenders, retail customers and automobile manufacturers – the Government contends that the common thread throughout Count 1 is that in all respects, the conspiracy was accomplished through material false statements, false representations and

4

omissions. (Govt.'s Resp. Def. Leach's Pretrial Mots. at 2) (citing Superseding Indictment, ¶¶ 12-17.) In addition, the Government identifies a second common thread of the conspiracy, namely, that after each of these sources provided money to the Hecker organization, and after the alleged conspirators engaged in fraud, the conspirators diverted the money to fund Defendant Hecker's extravagant lifestyle. (Id.) (citing Superseding Indictment, ¶ 12.) A third common thread, the Government contends, is that Defendants and others involved in the conspiracy engaged in cover-up and lulling communications. (Id. at 3) (citing Superseding Indictment, ¶ 18.) Contrary to Defendants' arguments, the Government also asserts that Count 1 does not allege a separate conspiracy that the bankruptcy estate was defrauded, but rather, it alleges that another means by which lenders in the overall single conspiracy were defrauded was by the conspirators' asset concealment following Defendant Hecker's fraudulent bankruptcy filing. (Govt.'s Resp. Def. Hecker's Pretrial Mots. at 23, n. 12.) As to Defendant Leach's 2007 departure from the Hecker organization, the Government responds that he participated in the overall objective of the conspiracy and set in motion the conduct that occurred following his departure.

Whether a particular case involves single or multiple conspiracies depends on whether there is one overall objective to perform functions in order to achieve the conspiracy's objective. United States v. Radtke, 415 F.3d 826, 838 (8th Cir. 2005). "Relevant factors 'includ[e] the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred.'" Id. (citations omitted). A single overall conspiracy "can be made up of a number of separate transactions and of a number of groups involved in separate crimes or acts." United States v.

5

Roach, 164 F.3d 403, 412 (8th Cir. 1996). In Radtke, Defendant Donohoe argued that the government failed to prove that fraud targeted at different victims – the Internal Revenue Service ("IRS") and union workers – was a single conspiracy rather than two separate conspiracies. 415 F.3d at 838. Donohoe, a construction firm's field operations manager, was indicted and convicted along with others on charges of conspiracy to defraud the IRS, mail fraud and tax law violations in a scheme in which a construction company paid employees using "cash checks" from which no taxes or union benefit payments were withheld. Id. at 833. On appeal, Donohoe argued that there was insufficient evidence regarding his intention to defraud the IRS and that the indictment was duplicitous. Id. at 838. Finding that "a conspiracy with multiple objectives is not the same thing as multiple conspiracies," the court noted that any fraud against the union depended on a similar mechanism as the fraud perpetrated against the IRS – the use of cash checks. Id. at 839. In addition, all of the fraud took place in specific, similar locations, the identity of the conspirators was equally uniform and the time frame for all of the allegedly fraudulent conduct was similar. Id. The Eighth Circuit therefore concluded that the evidence supported the existence of a single overall conspiracy in which Defendant Donohoe participated. Id. at 838-39.

"[A] single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." United States v. Smith, 450 F.3d 856, 860 (8th Cir. 2006) (citations omitted). In this vein, the Eighth Circuit model jury instruction for "Overt Acts" provides:

> It is not necessary that the defendant have personally committed the act, known about it, or witnessed it. It makes no difference which of the conspirators did the act. This is because a conspiracy is a kind of "partnership" so that under the law each member is an agent or partner of every other member and each member is

bound by or responsible for the acts of every other member done to further their scheme.

Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 5.06D.

In determining whether an indictment is duplicitous for stating multiple conspiracies, courts look to the indictment itself. See United States v. Begay, 42 F.3d 486, 501 (9th Cir. 1994). At the pretrial stage, as long as the indictment alleges a single conspiracy on its face by connecting alleged activities to one conspiracy, courts have held that it is not duplicitous. See United States v. Rigas, 281 F. Supp.2d 660, 664 (S.D.N.Y. 2003). Rather, the question of whether there is a single conspiracy or multiple conspiracies remains an issue for the jury to determine. See United States v. England, 966 F.2d 404, 406 (8th Cir. 1992), cert. denied, 506 U.S. 1025 (1992); United States v. Johnson, 239 F. Supp.2d 897, 911 (N.D. Iowa 2002). In United States v. Alexander, 736 F. Supp. 968, 995 (D. Minn. 1990), this Court held that it was inappropriate at the pretrial stage to resolve the issue of duplicity where the defendant's multiple conspiracy argument was "entirely dependent upon proof at trial of [the government's] underlying assertions."

Here, Count 1 alleges a single conspiracy on its face. Specifically, it alleges a conspiracy in Minnesota, from November 2006 through June 2009, to commit wire fraud by defrauding those who would provide money to Defendant Hecker and his organization. The common objective of the conspiracy was to enable Defendant Hecker, the Hecker organization and others to obtain millions of dollars from various sources. (Superseding Indictment ¶ 11.)

As noted, even where participants and activities may change over time, and even if many of the participants are uninvolved in certain transactions, or even unaware of them, a single conspiracy may exist. Smith, 450 F.3d at 860. Defendant Hecker is alleged to be the common

7

conspirator, therefore, it is not necessary that Defendant Leach was involved in, or knowledgeable about, all aspects of the conspiracy.  See United States v. Bass, 472 F.2d 207, 213 (8th Cir. 1973).   The fact that Defendant Leach left the Hecker organization in 2007 does not alter his alleged involvement in the conspiracy – involvement which, as the Government notes, he did not disavow upon his departure.

      Although the Court considers the allegations in Count 1 to be proper and not duplicitous, to the extent that Defendants' multiple conspiracy arguments create a factual dispute, it may be properly resolved by the jury.  See Alexander, 736 F. Supp. at 995.  Additionally, at trial, an appropriately worded jury instruction on unanimity will serve to cure potential prejudice related to Defendants' duplicity arguments.  See United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997) (holding that a limiting instruction was sufficient to cure the risk of a nonunanimous verdict on a conspiracy charge.), cert. denied, 523 U.S. 1065 (1998).  The Eighth Circuit model instruction for Single/Multiple Conspiracies provides:

> The Government must convince [the jury] beyond a reasonable doubt that each defendant was a member of the conspiracy charged in the indictment.  If the Government fails to prove this as to a defendant, then [the jury] must find the defendant not guilty of the conspiracy charge, even if [the jury] find[s] that [the defendant] was a member of some other conspiracy.

Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 5.06G.  In United States v. Rabinowitz, 56 F.3d 932, 933 (8th Cir.1995), Defendant Rabinowitz was charged in a single count with conspiracy to defraud a client by using a wire transfer and to defraud the United States by impeding the IRS's assessment and collection of income taxes on the fraud proceeds.  The government maintained that Count 1 charged a single conspiracy with two objects, because the criminal acts supporting the two objects were interrelated.  Id.  In response to Rabinowitz's

8

argument that the indictment was duplicitous, the Eighth Circuit deferred to the jury instructions:

> The risk of a nonunanimous jury verdict inherent in a duplicitous count may be cured by a limiting instruction. That is the case here. The district court instructed the jury that the Government only had to prove a conspiracy either to commit wire fraud or to impede the IRS, but that if the Government only proved a conspiracy to commit one of the two offenses, the jury must unanimously agree on which offense the defendants conspired to commit. We must assume that the jury followed these instructions.

Id. (citations omitted).

### b. Defendant Leach's Motion to Strike ¶¶ 16-19 of Count 1

Defendant Leach also moves to strike ¶¶ 16-19 of Count 1, arguing that these paragraphs are surplusage, irrelevant and unfairly prejudicial. Specifically, ¶ 16 alleges fraud on lenders, ¶ 17 alleges fraud on retail customers, ¶ 18 alleges lulling communications and ¶ 19 alleges concealing assets and filing bankruptcy in order to avoid debt repayments.

Pursuant to Fed. R. Crim. P. 7(d), "upon the defendant's motion, the court may strike surplusage from the indictment or information." The Eighth Circuit has held that such motions should be granted in limited circumstances and "only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." United States v. Michel-Galaviz, 415 F.3d 946, 948 (8th Cir. 2005). Other courts have concluded that "if the language in the Indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be." United States v. Lov-It Creamery, 704 F. Supp. 1532, 1550-51 (E.D. Wis. 1989) (citing United States v. Climatemp, Inc., 482 F. Supp. 376, 391 (N. D. Ill. 1979), aff'd, 705 F.2d 461 (7th Cir. 1983)).

The Court concludes that the allegations contained in ¶¶ 16-19 are relevant to the charge

9

and do not contain inflammatory and prejudicial matter. Paragraph 16 alleges material false statements made to lenders with respect to vehicle sales proceeds. Specifically, it alleges that after Defendant Hecker and others sold vehicles that lenders had financed, Hecker and others kept the sales proceeds rather than holding them in trust and paying them to the lenders which had financed the vehicles. (Superseding Indictment ¶ 16.) Paragraph 17 alleges material false statements to retail customers of Defendant Hecker's car dealerships. In particular, the Government alleges that after Defendant Hecker and his organization received the vehicle sales proceeds, Hecker, and others at his direction, kept the tax, title and license portion of the sales rather than holding them in trust and paying them to the state. (Id. ¶ 17.) Paragraph 18 alleges that to prevent the conspiracy and fraud from coming to light, Defendants and others engaged in cover-up and lulling activities. (Id. ¶ 18.) Paragraph 19 alleges that in June 2009, Defendant Hecker filed for bankruptcy in an effort to avoid repayment obligations to his lenders. (Id. ¶ 19.) Despite his personal bankruptcy filing, the Government alleges that Defendant Hecker kept hundreds of millions of dollars owed to his lenders and others and, with the assistance of others, he concealed his assets. (Id.) These paragraphs allege actions relevant to the overall wire fraud conspiracy charge. Defendant Leach is charged with participating in the conspiracy. While Mr. Leach contends that he did not participate in the activities described in these paragraphs, he may argue that at trial, but the allegations in ¶¶ 16-19 are not surplusage. Nor does the Court find the language in these paragraphs to be either inflammatory or prejudicial.

For all the reasons set forth above, the Court recommends that Defendants' Motions to Dismiss Count 1 be denied.

### 2. Defendant Hecker's Motion to Dismiss Count 16

Defendant Hecker moves to dismiss Count 16, alleging it is duplicitous. Count 16 charges Defendant Hecker with fraudulently making false declarations in connection with bankruptcy filings, in violation of 18 U.S.C. § 152(3). (Superseding Indictment, Count 16.) Defendant Hecker argues that Count 16 enumerates eight "separate allegedly false statements or omissions," which are improperly joined in a single count. (Def. Hecker's Mot. to Dismiss at 4.) He seeks an order either dismissing the count or requiring the Government to elect a single offense.

The Government opposes Defendant Hecker's motion, arguing that it properly charged multiple false statements in a single count. (Govt's Resp. Def. Hecker's Pretrial Mots. at 27.) Within Count 16, the Government includes eight instances in which Defendant Hecker is alleged to have made material false statements and omissions in filing his Schedules of Assets and Liabilities and a Statement of Financial Affairs. (Superseding Indictment ¶ 65, Table.) As an example, one of the eight instances of false statements alleged by the Government is as follows: "Hecker omitted disclosing that in the prior year he had acquired a 2008 black Land Rover vehicle that was titled in the name of Individual A but paid for and owned by Hecker." (Id.)

While there are few cases addressing claims of duplicity in the bankruptcy fraud context, courts facing this issue have held that "the fraudulent nondisclosure of several items of property in the petition for bankruptcy [is] a 'single, continuous concealment' constituting a single offense" because the duty to disclose is "a single duty to reveal all." United States v. White, 879 F.2d 1509, 1512 (7th Cir. 1989) (citations omitted), cert. denied, 494 U.S. 1027 (1990); see also, Edwards v. United States, 265 F.2d 302 (9th Cir.1959) (holding, in a case in which defendants were charged with the concealment of eight different items of property,"[t]he fact that several

11

different items of property belonging to the estate of a bankrupt were concealed does not multiply the number of offenses, even though the concealment of any one of the items standing alone would constitute the offense denounced by the statute.") By analogy, in cases involving false statements on tax returns or naturalization forms, courts have similarly held that multiple misrepresentations on a tax return and multiple means to commit a single offense may be charged in a single count. See United States v. Warner, 428 F.2d 730, 735 (8th Cir. 1970), cert. denied, 400 U.S. 930 (1970); United States v. Damrah, 412 F.3d 618, 624 (6th Cir. 2005).

In United States v. Bortnick, 03-CR-0414, 2004 WL 2738829 (E.D. Pa. Nov. 29, 2004), the court held that it was permissible to charge multiple fraudulent omissions or statements in a bankruptcy filing in a single count. Other courts, addressing this issue under similar statutes, including 18 U.S.C. § 1001 (false statements) and 18 U.S.C. § 1014 (fraudulent loan transactions), have reached the same conclusion. See United States v. Crisci, 273 F.3d 235, 239 (2d Cir. 2001); United States v. Mangieri, 694 F.2d 1270, 1281 (D.C. Cir. 1982); United States v. Sue, 586 F.2d 70, 71 (8th Cir. 1978); United States v. Czichray, 01-CR-307 JRT/FLN, 2002 WL 1763998 (D. Minn. July 26, 2002).

In Czichray, the defendant was charged with making false statements on a loan application and devising a scheme to defraud a bank and the Small Business Administration ("SBA"). 2002 WL 1763998 at *1. The defendant argued that a particular count, alleging four different methods by which he violated a statute prohibiting the making of false statements to influence the SBA, was duplicitous. This Court disagreed, holding that the indictment did not allege four offenses, but rather one offense committed by four different methods. Id. at *2. "If the relevant statute creates a single offense which can be committed in a variety of ways, the

12

charge can be laid in a single count," this Court held, noting that if the Government had used several counts under such a statute, it would potentially render the indictment multiplicitous. Id. at *2, n. 1.

The Superseding Indictment in this case alleges that on approximately July 1, 2009, Defendant Hecker made a single filing with the Bankruptcy Court, under a single oath, in which he made multiple misrepresentations. The language in Count 16 clearly alleges a single criminal violation and it is not duplicitous. Moreover, as noted herein, any potential duplicity concerns may be cured with an instruction on unanimity. See Nattier, 127 F.3d at 657. The Court recommends that Defendant Hecker's Motion to Dismiss Count 16 be denied.

### 3. Defendant Leach's Motion to Dismiss Counts 8-15

Defendant Leach also moves to dismiss Counts 8-15, the "Suzuki Counts," in which the Government alleges that, from approximately 2006 through 2008 or 2009, Defendants Hecker, Leach and others committed wire fraud by scheming to defraud various lenders who funded the Hecker organization's purchase of Suzuki vehicles. (Superseding Indictment, Counts 8-15.) The Superseding Indictment alleges that pursuant to Suzuki vehicle purchase contracts that Leach and others fraudulently altered in 2008, 2007 and prior to 2007, lenders provided funding. (Id., ¶¶ 43, 46, 47.) Defendant Leach argues that the Suzuki Counts pertain only to 2008 and the 2008 Suzuki contract. Therefore, because he left the Hecker organization in late 2007, the counts should be dismissed for failure to state an offense pursuant to Fed. R. Crim. P. 12(b)(2). (Def. Leach's Mot. Dismiss Suzuki Cts. at 3.)

In response, the Government argues that the Suzuki Counts allege that Defendant Leach participated in the scheme from 2006 through at least the winter of 2007, after which time he left

13

the Hecker organization. (Govt.'s Resp. to Def. Leach's Pretrial Mots. at 9) (citing Superseding Indictment ¶¶ 43, 45, 47-48, 50.) During that time, the Government alleges that Defendant Leach's actions pertained to all of the Suzuki contracts at issue, including the 2008 contract, which, the Government alleges, he negotiated and participated in fraudulently altering in late 2007. Id.

When considering a defendant's argument for dismissal pursuant to Rule 12, the court must accept all of the government's allegations in the charging document as true. See, e.g., United States v. Sampson, 371 U.S. 75, 78-79 (1962) ("Of course, none of these charges have been established by evidence, but at this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense."); United States v. Kay, 359 F.3d 738, 742 (5th Cir. 2004) (similar). The court must also "make all factual inferences in favor of the government[.]" United States v. Jeronimo-Bautista, 425 F.3d 1266, 1267 (10th Cir. 2005), cert. denied, 547 U.S. 1069 (2006).

In United States v. Hughson, 488 F.Supp.2d 835 (D. Minn. 2007), this Court held that, in evaluating an indictment for failure to state an offense, courts must look at the face of the indictment:

> To withstand a Motion to Dismiss, an Indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged. See, United States v. Polychron, 841 F.2d 833, 834 (8th Cir.1988). As a result, if the acts, that are alleged in the Indictment, do not constitute a criminal offense, then the Indictment should be dismissed. See, e.g., United States v. Coia, 719 F.2d 1120, 1123 (11th Cir.1983), cert. denied, 466 U.S. 973, 104 S. Ct. 2349, 80 L. Ed.2d 822 (1984). In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, as to the offenses that are said to have occurred, in order to place the defendant on fair notice of the charges against him, and to enable him to raise an acquittal, or conviction, so as to prevent his double jeopardy for a single offense. See, Hamling v. United States,

> 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L. Ed.2d 590 (1974); <u>United States v. Hall</u>,
> 20 F.3d 1084, 1087 (10th Cir.1994).

<u>Id.</u> at 840; <u>see</u> also <u>United States v. Hernandez</u>, 299 F.3d 984, 992 (8th Cir. 2002) (discussing elements required for legally sufficient indictment), <u>cert. denied</u>, 537 U.S. 1134 (2003). An indictment is generally sufficient if it tracks the language of the statute itself, as long as it is accompanied by a statement of the facts and circumstances to adequately inform the accused of the specific offense. <u>Hamling</u>, 418 U.S. at 117. Insufficiency of the evidence is not a proper reason to dismiss an indictment. See <u>United States v. Means</u>, 07-CR-50003-01-KES, 2008 WL 216406, *2 (D. S.D. Jan. 24, 2008).

As to the particular offense at issue, wire fraud, "[t]o prove wire fraud, the government must show the defendant voluntarily joined a scheme to defraud another out of money, that he did so with intent to defraud, that it was reasonably foreseeable interstate wire communications would be used, and that interstate wire communications were used." <u>United States v. Slaughter</u>, 128 F.3d 623, 628 (8th Cir. 1997) (citing <u>United States v. Proffit</u>, 49 F.3d 404, 406 n. 1 (8th Cir.1995); <u>Atlas Pile Driving Co. v. DiCon Fin. Co.</u>, 886 F.2d 986, 991 (8th Cir.1989)). The Government is not required to prove that a defendant himself transmitted or caused to be transmitted the wire transfers at issue, because "a defendant will be deemed to have 'caused' the use of ... the interstate wires if the use was the reasonably foreseeable result of his actions." <u>United States v. Hetherington</u>, 256 F.3d 788, 794 (8th Cir. 2001) (citing <u>United States v. Wrehe</u>, 628 F.2d 1079, 1085 (8th Cir.1980)).

Courts have held that under aiding and abetting theories of fraud, a defendant may be convicted where his acts were undertaken for his superior in the participation of the overall scheme, but the defendant did not perform a number of other acts. See <u>United States v. Hively</u>,

15

437 F.3d 752, 764 (8th Cir. 2006) (affirming mail fraud and racketeering convictions of elected prosecutor and his deputy). This is consistent with the model jury instructions for aiding and abetting, which provide, "A person may be found guilty of [an offense] even if [he] [she] personally did not do every act constituting the offense charged, if [he] [she] aided and abetted the commission of [the offense]." Manual of Model Criminal Jury Instructions for the Eighth Circuit, § 5.01.

Here, the allegations in Counts 8-15 track the language of 18 U.S.C. §§ 1343 and 2. Regarding the elements of wire fraud, the Government has alleged conduct involving Defendant Leach in 2007. Even if he left the Hecker organization at the end of that year, the Superseding Indictment nonetheless alleges a single overall scheme, under a theory of aiding and abetting, and the Government need not prove that Defendant Leach was personally transmitting every wire transfer contained within the Suzuki Counts. See Slaughter, 128 F.3d at 628. Moreover, in ¶¶ 47, 48 and 50, the Government specifically alleges Defendant Leach's involvement in the 2008 Suzuki contracts, along with his involvement in the earlier contracts, as set forth in ¶¶ 43 and 45. The language in Counts 8-15 tracks the wire fraud statute and properly states an offense against Defendant Leach consistent with applicable authority for his participation in the alleged Suzuki scheme. The Counts describe acts which set in motion a scheme in which later wire transfers were reasonably foreseeable. Accordingly, the Court recommends that Defendant Leach's Motion to Dismiss Counts 8-15 be denied.

### B. Defendant Hecker's Suppression Motions

Defendant Hecker filed a Motion to Suppress Statements (Doc. No. 145) and a Motion to

Suppress Wire Taps, Oral Communications and other Electronic Eavesdropping (Doc. No 148). Both motions should be denied as moot, because the Government represents that it obtained no statements from Defendant Hecker and no wire taps were used in the Government's investigation.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1. Defendant Hecker's Motion to Dismiss Counts 1 and 16 of the Superseding Indictment (Doc. No. 140) be **DENIED;**

2. Defendant Hecker's Motion to Suppress Statements (Doc. No. 145) be **DENIED AS MOOT**;

3. Defendant Hecker's Motion to Suppress Wire Taps, Oral Communications and other Electronic Eavesdropping (Doc. No 148) be **DENIED AS MOOT;**

4. Defendant Leach's Motion to Dismiss or Elect as to Count 1 of the Superseding Indictment (Doc. No. 97) be **DENIED**; and

5. Defendant Leach's Motion to Dismiss Counts 8-15 of the Superseding Indictment (Doc. No. 99) be **DENIED**.

Dated: July 6, 2010

s/ Susan Richard Nelson<br>
SUSAN RICHARD NELSON<br>
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **July 21, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.