UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 10-32(2) (JNE/SRN)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **THIRD SUPERSEDING INDICTMENT** |
| ) | |
| Plaintiff, ) | (18 U.S.C. § 2) |
| ) | (18 U.S.C. § 1343) |
| v.   ) | (18 U.S.C. § 1349) |
| ) | |
| STEVEN JOSEPH LEACH, ) | |
| ) | |
| Defendant. ) | |

THE UNITED STATES GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Third Superseding Indictment:

1. Defendant STEVEN JOSEPH LEACH, a resident of Minnesota, was President of Rosedale Dodge, Inc. d/b/a Rosedale Leasing, and Walden Fleet Services II, Inc., among others (collectively "Rosedale/Walden"). Rosedale/Walden was in the business of purchasing fleet vehicles and leasing them to rental car companies. LEACH reported to and worked with Dennis E. Hecker, the Chairman and Chief Executive Officer of Rosedale/Walden.

2. To fund the businesses and to purchase vehicles, Rosedale/Walden borrowed money from commercial lending companies ("lenders"), including Chrysler Financial Services Americas LLC and its predecessors, such as DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC (collectively, "Chrysler Financial"), U.S. Bank National

SCANNED
SEP 1 5 2010
U.S. DISTRICT COURT MPLS

FILED   SEP 1 5 2010
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERKS INITIALS

<u>U.S. v. Steven Joseph Leach</u>      Criminal No. 10-32(2)(JNE/SRN)

Association ("U.S. Bank"), Carlton Financial Corporation ("Carlton Financial"), and others.

3. The fleet vehicles that Rosedale/Walden purchased were generally categorized by automobile manufacturers as either "repurchase" or "risk." "Repurchase" vehicles were subject to a guarantee that the automobile manufacturers would in effect buy back the vehicles for a set price after a certain period of time and subject to certain conditions. "Risk" vehicles had no such repurchase guarantee. Thus, "risk" vehicles exposed Rosedale/Walden and lenders to greater financial risk, and therefore, whether the vehicles at issue were categorized as "repurchase" or "risk" vehicles was material to lenders.

4. To induce Rosedale/Walden and other businesses to purchase fleet vehicles, automobile manufacturers typically offered incentive payments. Incentive payments, which could be upwards of thousands of dollars per vehicle, were a form of "cash back" that the purchaser, such as Rosedale/Walden, received after buying the vehicles. Among other things, incentive payments reduced Rosedale/Walden's actual cost per vehicle. Thus, whether Rosedale/Walden received incentive payments and the amount of any incentive payments was material information to lenders.

U.S. v. Steven Joseph Leach                Criminal No. 10-32(2)(JNE/SRN)

## COUNT 1
(Conspiracy to Commit Wire Fraud)

5. The Grand Jury hereby realleges and incorporates paragraphs 1 through 4 of this Third Superseding Indictment as if stated in full herein.

6. Beginning at least in or about November 2006, and continuing through at least in or about June 2009, the exact dates being unknown to the Grand Jury, in the State and District of Minnesota and elsewhere, the defendant,

**STEVEN JOSEPH LEACH,**

knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to the Grand Jury to commit offenses against the United States, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain money and property from lenders and others by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, to knowingly cause to be transmitted in interstate commerce, by means of wire communications, certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

7. The unlawful purpose of this conspiracy was to enable Rosedale/Walden and others to obtain millions of dollars from

3

U.S. v. Steven Joseph Leach          Criminal No. 10-32(2)(JNE/SRN)

various sources, including financing from lenders and incentive money from automobile manufacturers, all by making material false statements, false representations and omissions.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means, among others, of this conspiracy were as follows:

8.  To obtain millions of dollars from various sources, LEACH and others made material false statements, false representations, and omissions.

9.  The material false statements, false representations, and omissions included presenting lenders with fraudulently altered documents that purported to but did not in fact represent the actual terms automobile manufacturers had offered Rosedale/Walden with regard to fleet vehicle purchases.

10. The material false statements, false representations, and omissions included misrepresentations and omissions to lenders with respect to the nature and value of the collateral, that is, the vehicles that secured the lenders' financing.

11. The material false statements, false representations, and omissions included misrepresentations and omissions to lenders with respect to millions of dollars in incentive payments received by Rosedale/Walden from automobile manufacturers.

4

U.S. v. Steven Joseph Leach                Criminal No. 10-32(2)(JNE/SRN)

12. On or about December 4, 2007, after making admissions regarding certain aspects of the fraud, LEACH tendered his resignation to Hecker, in an attempt to distance himself from the fraud scheme in which he had participated. LEACH continued to work for and receive salary and bonus from Rosedale/Walden through approximately early January 2008, and continued to further other aspects of the fraud.

13. At least in part to prevent the conspiracy and fraud from coming to light and/or being reported to the authorities, LEACH and others engaged in lulling communications and cover-up with various individuals and entities.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-5
(Wire Fraud)

14. The Grand Jury hereby realleges and incorporates paragraphs 1 through 4 and 8 through 13 of this Third Superseding Indictment as if stated in full herein.

15. Beginning at least in or about September 2007, and continuing through at least in or about June 2009, the exact dates being unknown to the Grand Jury, in the State and District of Minnesota and elsewhere, the defendant,

U.S. v. Steven Joseph Leach          Criminal No. 10-32(2)(JNE/SRN)

**STEVEN JOSEPH LEACH,**

and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and intentionally devised a scheme and artifice to defraud and to obtain millions of dollars in money and property from Chrysler Financial and others by means of material false and fraudulent pretenses, representations, and promises.

### THE "HYUNDAI" FRAUD SCHEME

It was a part of the scheme and artifice that:

16. In or about the fall of 2007, LEACH and Hecker negotiated to purchase over 5,000 Hyundai vehicles from Hyundai Motor America ("HMA") for Rosedale/Walden's fleet leasing business.

17. Specifically, in approximately November 2007, HMA provided LEACH and Rosedale/Walden with three letters reflecting the deal that LEACH and others had negotiated with HMA. In the letters, HMA offered to sell Rosedale/Walden approximately 1) 605 "repurchase" vehicles ("605 repurchase letter"), 2) 4,250 "risk" vehicles ("4,250 risk letter"), and 3) 610 "risk" vehicles ("610 risk letter"). Thus, in the fall of 2007, HMA offered to sell Rosedale/Walden approximately 4,860 "risk" vehicles and approximately 605 "repurchase" vehicles, for a total of approximately 5,465 Hyundai vehicles.

18. As part of the deal with HMA, LEACH and others negotiated to receive millions of dollars, upwards of over

6

U.S. v. Steven Joseph Leach          Criminal No. 10-32(2)(JNE/SRN)

approximately $4,000 per "risk" vehicle, in incentive payments from HMA. As a result of the deal with HMA, Rosedale/Walden received over $17 million in incentive payments from HMA.

19. In or about the fall of 2007, LEACH and others arranged to obtain approximately $80 million in fleet lease financing for the Hyundai vehicles from Chrysler Financial. To obtain the fleet lease financing, LEACH and others made material false statements, false representations and omissions.

20. For example, on or about November 15, 2007, at Hecker's direction, and without HMA's permission or awareness, LEACH arranged to create a fraudulently altered HMA letter. Namely, LEACH provided an employee with the actual 605 repurchase letter. LEACH directed this person to cover existing language on the letter with a taped-on insert so that it would appear as if HMA was offering to sell Rosedale/Walden 4,855 "repurchase" Hyundai vehicles. In fact, as LEACH well knew, HMA had made no such offer. The purported "repurchase" number of 4,855 was calculated to reflect the approximate total number of "risk" vehicles that the Rosedale/Walden were already in the process of purchasing from HMA, but for which Rosedale/Walden needed permanent financing.

21. On or about November 15, 2007, LEACH caused the fraudulently altered HMA letter to be faxed from Rosedale/Walden

U.S. v. Steven Joseph Leach      Criminal No. 10-32(2)(JNE/SRN)

offices in St. Louis Park, Minnesota to Hecker at the Detroit Metropolitan Wayne County Airport in Michigan.

22. On November 15, 2007, after Hecker received the fraudulently altered HMA letter in Michigan, Hecker presented it to Chrysler Financial, along with the actual 610 risk letter. Hecker falsely represented the two documents as the deal he had negotiated with HMA. Hecker intentionally and affirmatively concealed from Chrysler Financial two of the actual HMA offer letters, the 4,250 risk letter and the 605 repurchase letter. Thus, LEACH and Hecker misled Chrysler Financial into believing HMA had offered to sell the Hecker organization a large number of "repurchase" vehicles, approximately 4,855, and a much smaller number of "risk" vehicles, approximately 610, for a total of approximately 5,465 Hyundai vehicles. In fact, as LEACH well knew, HMA's deal to sell a total of approximately 5,465 Hyundai vehicles consisted mostly of "risk" vehicles (approximately 4,860), with a much smaller number (approximately 605) of "repurchase" vehicles.

23. Thus, in or about November 2007, through the fraudulently altered HMA letter and through other material false statements, false representations, and omissions, LEACH and others misled Chrysler Financial into financing thousands of Hyundai "risk" vehicles believing that the vehicles were "repurchase" vehicles. As a result, the collateral for Chrysler Financial's financing was

U.S. v. Steven Joseph Leach          Criminal No. 10-32(2)(JNE/SRN)

substantially and materially less than what LEACH and others represented it to be. Namely, the majority of the Hyundai vehicles were not subject to any guarantee from HMA that it would repurchase the vehicles, and therefore Chrysler Financial was at significant financial risk that the vehicle sale proceeds ultimately would be insufficient to pay off the Hyundai vehicle financing.

24. In particular, starting in or about October 2007, LEACH caused others within the Hecker organization to prepare and to send to Chrysler Financial a number of funding packages, including security agreements and vehicle schedules, the content of which falsely represented that the vehicles that Chrysler Financial was financing for Rosedale/Walden were "repurchase" vehicles when in fact they were "risk" vehicles. Thus, through the funding packages, LEACH and others further misled Chrysler Financial as to the nature and value of Chrysler Financial's collateral.

25. In or about November 2007, Rosedale/Walden received HMA incentive payments, including a wire of approximately $7.8 million and a wire of approximately $9.4 million, after Rosedale/Walden began purchasing the Hyundai "risk" vehicles from HMA. Although information regarding the incentive payments to Rosedale/Walden was material to Chrysler Financial, the defendant, through the fraudulently altered HMA letter and otherwise, intentionally and

9

U.S. v. Steven Joseph Leach              Criminal No. 10-32(2)(JNE/SRN)

affirmatively concealed the incentive payments from Chrysler Financial.

26. At least in part to prevent the fraud from coming to light and/or being reported to the authorities, LEACH and others engaged in lulling communications and cover-up with various individuals and entities.

27. In early 2008, at least in part to prevent the fraud from coming to light and/or being reported to the authorities, others arranged to have Hyundai Motor Finance Company, now known as Hyundai Capital America ("Hyundai Capital"), refinance a portion of the Hyundai vehicles financed by Chrysler Financial.

28. Despite the Hyundai Capital refinancing and some other payments, Rosedale/Walden did not fully repay the money that Chrysler Financial provided in reliance on LEACH's and others' material false statements, false representations, and omissions. After Rosedale/Walden failed to repay Chrysler Financial, and after Chrysler Financial sold its collateral, including the Hyundai vehicles that did not have the HMA repurchase guarantee represented by the LEACH and others, Chrysler Financial suffered a financial loss that exceeds approximately $10 million.

### THE WIRES

29. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, and for the purpose of

U.S. v. Steven Joseph Leach                Criminal No. 10-32(2)(JNE/SRN)

executing and attempting to execute the scheme and artifice, the defendant,

**STEVEN JOSEPH LEACH,**

and others known and unknown to the Grand Jury, aiding and abetting each other, for the purpose of executing and attempting to execute the scheme and artifice, knowingly caused to be transmitted in interstate commerce the interstate wire communications described below:

| COUNT | DATE | WIRE COMMUNICATION |
| --- | --- | --- |
| 2 | 11/15/07 | Wire transfer of approximately $7.8 million from HMA's account at Bank of America in New York to Rosedale/Walden's account at Wells Fargo Bank in Minnesota |
| 3 | 11/15/07 | Facsimile transmission of fraudulently altered HMA letter from Rosedale/Walden in Minnesota to Detroit Metropolitan Wayne County Airport in Michigan |
| 4 | 11/19/07 | Email from Chrysler Financial in Michigan to Hecker in Minnesota, cc: LEACH and others, re. the Hyundai program |
| 5 | 11/30/07 | Wire transfer of approximately $9.4 million from HMA's account at Bank of America in New York to Rosedale/Walden's account at Wells Fargo Bank in Minnesota |

All in violation of Title 18, United States Code, Sections 1343 and 2.

U.S. v. Steven Joseph Leach          Criminal No. 10-32(2)(JNE/SRN)

### COUNTS 6-10
(Wire Fraud)

30. The Grand Jury hereby realleges and incorporates paragraphs 1 through 4, 8 through 13, and 16 through 28 of this Third Superseding Indictment as if stated in full herein.

31. Beginning at least in or about November 2006, and continuing through at least in or about June 2009, the exact dates being unknown to the Grand Jury, in the State and District of Minnesota and elsewhere, the defendant,

**STEVEN JOSEPH LEACH,**

and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and intentionally devised a scheme and artifice to defraud and to obtain millions of dollars in money and property from Chrysler Financial and others by means of material false and fraudulent pretenses, representations, and promises.

### THE "SUZUKI" FRAUD SCHEME

It was a part of the scheme and artifice that:

32. In or about the fall of 2006, as he had done in prior years, LEACH negotiated to purchase Suzuki "repurchase" vehicles from American Suzuki Motor Corporation ("Suzuki Motor") for Rosedale/Walden's fleet leasing business. To memorialize the deal, Suzuki Motor provided Rosedale/Walden with the 2007 purchase contract ("2007 Suzuki contract").

12

U.S. v. Steven Joseph Leach          Criminal No. 10-32(2)(JNE/SRN)

33. A material part of the 2007 Suzuki contract was a page entitled "Addendum A" that set forth fleet incentives, or "cash back," that Suzuki Motor would pay Rosedale/Walden ("Addendum A incentive page"). By way of example, for a 2007 Model XL-7 2WD with a dealer invoice price of $23,913.94, the fleet incentive was $4,513.94, which reduced Rosedale/Walden's actual cost for that vehicle to $19,400.00. In addition, because the amount that Suzuki Motor guaranteed to pay to "repurchase" each vehicle was based on Rosedale/Walden's actual cost, the incentives also reduced the ultimate "repurchase" payments Rosedale/Walden would receive after the vehicle was taken out of rental service and sold at auction.

34. In or about the fall of 2006, at LEACH's and Hecker's direction, and without Suzuki Motor's permission or awareness, the 2007 Suzuki contract was fraudulently altered by the deliberate and intentional removal of the Addendum A incentive page. The fraudulently altered contract was provided to Chrysler Financial in order to obtain what ultimately amounted to approximately $20 million in fleet lease financing for approximately 700 Suzuki vehicles at the full dealer invoice price. As such, LEACH and others withheld material information from Chrysler Financial about Rosedale/Walden's actual cost per vehicle and about the true value of Suzuki Motor's "repurchase" guarantee. Thus, the collateral for Chrysler Financial's financing was substantially and materially

U.S. v. Steven Joseph Leach     Criminal No. 10-32(2)(JNE/SRN)

less than what LEACH and others represented it to be, and Chrysler Financial was at significant financial risk that the vehicle sale proceeds, including "repurchase" payments, ultimately would be insufficient to pay off the Suzuki vehicle financing.

35. As a result of the fraud, throughout 2007, Rosedale/Walden was able to obtain millions of dollars in incentive payments and to obtain Suzuki vehicles. In years prior to 2007, LEACH or others at his direction had similarly provided lenders with the fraudulently altered Suzuki contracts which omitted the Addendum A incentive page, allowing Rosedale/Walden to obtain the incentive payments and to obtain the Suzuki vehicles.

36. In or about the fall of 2007, LEACH again negotiated to purchase Suzuki "repurchase" vehicles from Suzuki Motor, and Suzuki Motor again provided Rosedale/Walden with the purchase contract ("2008 Suzuki contract"). As in past years, a material part of the 2008 Suzuki contract was the Addendum A incentive page listing the fleet incentives. Once again, at LEACH's and others' direction, the 2008 Suzuki contract was fraudulently altered by the deliberate and intentional removal of the material Addendum A incentive page.

37. In or about late 2007, Rosedale/Walden began preparing to obtain from Chrysler Financial what would ultimately amount to approximately $50 million in fleet lease financing for

U.S. v. Steven Joseph Leach                Criminal No. 10-32(2)(JNE/SRN)

approximately 2,000 Suzuki vehicles at the full dealer invoice price.

38. In or about early February 2008, after being told on numerous occasions by LEACH and others not to provide the Addendum A incentive page to Chrysler Financial, a Hecker organization employee inadvertently included a copy of the Addendum A incentive page among other documents delivered to Chrysler Financial. Chrysler Financial then insisted on receiving the incentive payments that were part of the 2008 Suzuki contract.

39. In order to receive and retain incentive payments on additional Suzuki vehicles that could no longer be hidden from Chrysler Financial and to further the fraudulent scheme that LEACH and others had devised, Hecker and others approached other lenders to finance the remaining Suzuki vehicles that LEACH had negotiated to purchase. As LEACH had directed with respect to the same 2008 contract and prior Suzuki contracts, Hecker and others at Rosedale/Walden continued the fraudulent scheme by providing the other lenders with a fraudulently altered 2008 Suzuki contract with the Addendum A incentive page materially omitted. As a result of the omitted incentive information, the collateral for these other lenders' financing was substantially and materially less than what it was represented to be, and the other lenders were at significant financial risk that the vehicle sales proceeds, including

U.S. v. Steven Joseph Leach   Criminal No. 10-32(2)(JNE/SRN)

"repurchase" payments, ultimately would be insufficient to pay off the Suzuki vehicle financing.

40. As a result of the fraud, throughout 2008, Rosedale/Walden was able to obtain millions of dollars in incentive payments and to obtain Suzuki vehicles.

41. At least in part to prevent the fraud from coming to light and/or being reported to the authorities, LEACH and others engaged in lulling communications and cover-up with various individuals and entities.

42. Rosedale/Walden did not fully repay the money that lenders provided in reliance on the fraudulently altered 2008 Suzuki contract and otherwise. After Rosedale/Walden failed to repay the lenders, and after all the Suzuki vehicles are sold, the lenders collectively are expected to suffer a financial loss that exceeds approximately $5 million.

### THE WIRES

43. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, and for the purpose of executing and attempting to execute the scheme and artifice, the defendant,

**STEVEN JOSEPH LEACH,**

and others known and unknown to the Grand Jury, aiding and abetting each other, for the purpose of executing and attempting to execute

16

U.S. v. Steven Joseph Leach        Criminal No. 10-32(2)(JNE/SRN)

the scheme and artifice, knowingly caused to be transmitted in interstate commerce the interstate wire communications described below:

| COUNT | DATE | WIRE COMMUNICATION |
|---|---|---|
| 6 | 3/16/07 | Email from Rosedale/Walden in Minnesota to Chrysler Financial in Michigan, attaching fraudulently altered 2007 Suzuki contract, signed by LEACH |
| 7 | 8/23/07 | Wire transfer of approximately $566,184 from Suzuki Motor's account at Union Bank in California to Rosedale/Walden's account at Wells Fargo Bank in Minnesota |
| 8 | 12/18/07 | Email from LEACH in Minnesota to Suzuki Motor in California ordering 2000 additional Suzuki vehicles |
| 9 | 12/20/07 | Email from Suzuki Motor in California to LEACH in Minnesota, attaching 2008 Suzuki contract |
| 10 | 1/29/08 | Email from Rosedale/Walden in Minnesota to Chrysler Financial in Michigan, attaching fraudulently altered 2008 Suzuki contract |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**FORFEITURE ALLEGATIONS**

Counts 1 through 10 of this Third Superseding Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

17

U.S. v. Steven Joseph Leach          Criminal No. 10-32(2)(JNE/SRN)

As a result of the offenses alleged in Counts 1 through 10 of this Third Superseding Indictment, the defendant,

**STEVEN JOSEPH LEACH,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 2, 1343 and 1349.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 2, 981(a)(1)(C), 982(b)(1), 1343, 1349 and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                   FOREPERSON